PER CURIAM:
Claimant brought this action to recover costs for the damage that resulted due to the landslides on her property. She alleges that the landslides were caused by respondent’s negligent maintenance of the drainage system on Ferguson Branch Road, designated as Route 52/21, in Wayne County. Route 52/21 is a road maintained by respondent. The Court is of the opinion to deny this claim for the reasons more fully stated below.
In 1990, claimant and her husband purchased property adjacent to Route 52/21 from Norman Maynard and Shirley Maynard.[14] At that time, there was a house on the *129 property as well as two smaller structures. The house burned down in 2001. Thereafter, the claimant and her husband purchased a double-wide trailer that was placed on the property in December 2001. Claimant’s husband leveled the land for the placement of the trailer in the area where the house had been situated. During January 2002, claimant and her family moved into the double-wide trailer. In 2003, claimant and her husband divorced. After the divorce, the double-wide trailer was removed from her property. Currently, there are no structures located on this parcel of land, and claimant no longer lives on the property. Although claimant is the sole owner of the real estate, her two daughters have a future interest in the property which will fully vest when both daughters reach the age of majority.[15]
Claimant’s ten-and-a-half acre parcel of land is located adjacent to Route 52/21, which is a one-lane road with an asphalt surface. The property is situated approximately fifteen miles from the town of Wayne. Route 52/21 extends for approximately two miles, and claimant’s driveway runs parallel to Route 52/21 for approximately 150 yards. A strip of land on claimant’s property divides Route 52/21 from claimant’s driveway. Respondent’s drainage ditch is located across the road from claimant’s property near the hillside adjacent to Route 52/21.
Claimant asserts that the crux of the problem is the failure of respondent to maintain the ditch line on Route 52/21. The ditch line became stopped up, and water would no longer flow through the culvert, causing it to flow across the road and onto claimant’s property. Claimant first became aware of the problem in October 2002, when she noticed a crack on her driveway that extended into the roadway. She notified respondent’s Wayne Office of the problem. She asserts that if respondent had cleaned out the ditch line, the landslides would not have occurred. Claimant submitted as evidence photographs of the entrance to her driveway which demonstrate that a portion of her driveway has broken off and sunk approximately three feet. Claimant alleges that her driveway has become unsafe to walk or drive upon.[16]
Ronnie Finley, claimant’s boyfriend, contends that water travels from the hillside adjacent to the State road and towards the ditch line. Since the ditch line becomes filled with water, and the water does not reach the culvert on top of the hill, it seeps under the road and onto claimant’s driveway. During the winter, water froze under Route 52/21, causing the asphalt to continue to deteriorate. Mr. Finley testified that in his opinion another culvert is needed near the ditch line because the existing culvert is located on a high point and consequently doesn’t keep the water from flowing onto claimant’s property.
Mr. Finley asserts that the fifty yards of claimant’s property adjacent to Route *130 52/21 were affected by the failure of respondent to maintain the drainage ditches. Claimant’s driveway has slipped approximately five or six feet, and at one time, this area was nearly level with the main road. During the Spring of 2003, respondent placed additional gravel on the road to alleviate the problem. Also, respondent installed boulders in an effort to hold back the State road. According to Mr. Finley, these measures did not remedy the land slide. When respondent placed additional gravel on the road, it pushed the mud down hill, causing the driveway to slope at a steeper angle before it stabilized.
Claimant seeks to recover for the cost of repairing the damage to her property. She also seeks to recover $100.00 per month in rent for the lot where her trailer is currently placed. She contends that she would not have incurred the cost of rent, which she has been paying since July 2005, if the damage to her property had not occurred. In addition, claimant obtained estimates for the cost of repairing the damage. The first estimate, from R&D Trucking and Excavating, totals to $16,000.[17] The second estimate, from Bryant’s Construction, totals $17,800.00.[18]
Respondent avers that it is not liable for the landslides that are occurring on claimant’s property. Joseph D. Carte, Senior Geotechnical Engineer for respondent, testified that he visited claimant’s parcel of land on three separate occasions and analyzed the cause of the landslides that occurred on claimant’s property. Mr. Carte explained that claimant’s property is located in a slip prone area.
In Mr. Carte’s professional opinion, a disturbance to the property triggered the landslides. He stated that respondent’s failure to maintain the ditch line was not the cause of the slip because there were no landslides from 1990 until October of 2002. These landslides occurred after the house burned down in 2001, and claimant’s ex-husband bulldozed the field on top of a spring on the property without placing a proper drainage *131 blanket.[19] Mr. Carte submitted an aerial photograph of claimant’s property which demonstrated that claimant’s driveway has been widened, which constitutes a further modification to claimant’s property. The mechanisms of saturation and water pressure on the ground itself further contributed to the slips.
Although claimant first observed the problem when she noticed a crack in the road, Mr. Carte testified that the crack did not originate from the road surface. Since the road surface is rigid, the crack was first noticeable on the road. However, when the toe of the slope began to give way, it migrated up the slope resulting in the crack in the road surface. Mr. Carte testified that a principle of slide mechanics is that a slide will seek equilibrium by migrating to a flatter slope. The end result is that it will stop sliding. Mr. Carte explained that when respondent placed additional gravel on the road, the weight caused the area below the road to give way, but this was the effect of the slip rather than its cause.
Mr. Carte further observed that there are two distinct slips on claimant’s property. The first slip is located in the area where the modular home was once situated. Mr. Carte stated that the toe of the slope was cut out when the driveway was widened and the area was cleared in order to place the modular home on the property. The presence of naturally occurring spring water had softened the toe of the slope, making the ground weak. Thus, Mr. Carte concluded that the excavation at the toe of the slope and the naturally occurring spring caused the landslide located in the area of the house seat.
Mr. Carte testified that the second slip is located at the front of claimant’s property in the area adjacent to Route 52/21 that extends onto claimant’s driveway. Mr. Carte believes that the driveway was improperly placed on a steep slope. He explained that the slope in this area is steeper than a forty-five degree angle and such a slope could not exist naturally because it is beyond the angle of repose. He further stated that soil located on such a steep slope would slip very easily when the surface became wet.
Mr. Carte stated that the driveway was at one time located at a higher level, and it has gradually sloped to the level of the house seat. He explained that the driveway has dropped to the point where the spring line is located, causing water to run across the road instead of through the fill. Cattails, which are plants that grow in areas where there is persistent water, emerged due to the presence of the ground water. He stated that the lack of subsurface drainage for the naturally occurring spring water contributed to the cause of the land slide. Also, the disturbance of widening the road when the double-wide trailer was brought onto the property further contributed to the landslide.
Mr. Carte explained that to remedy the landslide on claimant’s property, it is necessary to fortify the toe of the slope. He recommended that smaller sections of the slip be extracted to break up the slip surface. He stated that it would also be necessary to place a drainage blanket at the bottom of the slip plain. Then, the soil should be compacted over the top of the drainage blanket. He reviewed the costs of the estimates provided by the claimant and agreed that the work would cost around $16,000 to *132 $17,800.00.
To hold respondent liable for damages caused by inadequate drainage, claimant must prove by a preponderance of the evidence that respondent had actual or constructive notice of the existence of the inadequate drainage system and a reasonable amount of time to correct it. Orsburn v. Div. of Highways, 18 Ct. Cl. 125 (1991). In Maynard v. Dep't of Highways, 12 Ct. Cl. 4 (1977), the claimants, who were the previous property owners, sought to recover for the landslide which occurred due to the negligent maintenance of the drainage ditch on Route 52/21. The damage to the Maynards’ property consisted of a broken side walk and roughness in Norman Maynard’s driveway. Claimant and respondent had experts conduct an investigation of the cause of the landslide.[20] Respondent admitted liability and the Court made an award of $2,475.00 to Arthur Maynard and Mollie Maynard, and it also made an award of $ 1,250.00 to Norman Maynard and Shirley Maynard.[21]
In the present case, the Court finds that respondent was not negligent in its maintenance of the drainage ditch on Route 52/21. Since over twenty-five years have passed between the Maynards’ claim and the present claim, the Court finds that the conditions on the property changed substantially during this period of time. As Mr. Carte testified, the property has undergone several major disturbances which triggered the two landslides on their property, more specifically, the actions taken by claimant’s ex-husband which affected the toe of the slope abutting the driveway. Although it may seem reasonable for claimant to assume that the “stopped up” drainage ditch caused the landslide, the testimony at the hearing established that there are multiple factors that have contributed to the slippage which is continuing to occur on this property. As Mr. Carte *133 explained, the landslide located at the house seat occurred due to the excavation at the toe of the slope and the naturally occurring spring in this area. The slip in the area between Route 52/21 and claimant’s driveway was caused by the lack of subsurface drainage for the naturally occurring spring water and the disturbance which resulted from widening the road at this location. All of these factors lead the Court to conclude that claimant’s allegation that the slip is caused by respondent’s failure to maintain the ditch on its roadway is not substantiated by the evidence. The Court appreciates the careful analysis provided by respondent’s expert witness in this claim and his suggestions for claimant to consider to remedy the slip on her property. Although the Court is sympathetic to the claimant’s plight, there is insufficient evidence of negligence on the part of the respondent upon which to base an award.
Claim disallowed.

 At the hearing, claimant testified that the previous owners brought a claim against respondent for the negligent maintenance of the drainage ditch on Route 52/21 that resulted in the slippage of the land on their property. See Maynard v. *129 Dep't of Highways, 12 Ct. Cl. 4 (1977). The findings in this claim are discussed later in this opinion.

 Claimant’s oldest daughter is twenty years old, and her youngest daughter is thirteen years old.

 Claimant’s youngest daughter sustained injuries when she got off the school bus and fell due to the rough surface. Also, claimant sustained damages to her vehicle from traveling on her driveway, but claimant is not seeking damages as a result of these incidents.

 The estimate from R& D Trucking and Excavating indicates that the following work would need to be performed: (1) Remove stone and over burden on existing slip; (2) Take slip out down to harden material; (3) Below slip, dig footer for 6' retaining block; (4) Set block for wall to hold slip; (5) Dig and place 80' of 2' culvert for drainage; (6) Dig from back of property dirt to haul and fill slip and compact it to keep it from sinking; (7) Haul dirt to fill in 1ft lifts to keep compaction; (8) After fill is complete, haul approximately 80 tons of stone to be put at the entrance of the property.

 The Bryants’ construction estimate includes the cost for the following work: (1) Remove existing slip down to solid material; (2) Dig and pour footer for retaining wall two feet below solid; (3) Build forms for retaining wall and pour concrete; (4) Excavate fill dirt from back of said property; (5) Haul new dirt from back of property using dump truck; (5) Lift new dirt in 12 inch lifts compact to minimize settling; (6) Install 2 foot culvert pipe across driveway to divert water over hill and away from new fill; (7) Build retaining wall and back fill with gravel and drain pipe.

 When the house was bulldozed, Mr. Carte explained that the debris was not disposed of in a professional manner. He stated that the debris was placed in the toe of the slip where it was covered with soil. He stated that after the wood debris starts to decay, water may percolate through the soil, creating the potential for another slip in this area.

 Jerry W. Phelps, a civil engineer that testified on behalf of the claimants, concluded that the presence of respondent’s culvert had contributed to the slide. He stated that relocating the culvert would decrease the erosion and help prevent future movement of the slide. He recommended three remedial measures: (1) Backfill the scarp cracks with clay material; (2) Backfill the ravine which would restore the natural condition of the land; (3) Relocate the road culvert drain pipe to eliminate the excessive erosion force.
H. Douglas Preble, consulting geologist for respondent, conducted a field investigation of the cause of the landslide on claimants’ property. He concluded that no slip would have occurred if the area were receiving natural drainage flow. He testified that the slip was caused by excessive amounts of water being directed into the bowl and ravine area. He stated that normal drainage conditions existed until respondent placed a culvert beneath Route 52/21, directing an excessive amount of surface water into the area of the present slip, bowl and ravine. Also, the clogged ditch above Route 52/21 contributed to these conditions. He observed that the slip had stabilized after respondent’s culvert was removed sometime after Mr. Phelps’ investigation on September 19, 1975. However, he stated that the scarp line represents a zone of weakness and recommended that a culvert be used to cross the scarp and slip area in the drain ditch above Route 52/21, as well as the eastern scarp line where it crosses Norman Maynard’s private road.

 Norman Maynard and Shirley Maynard are the son and daughter-in-law of Arthur Maynard and Mollie Maynard.